| | |
|---|---|
| Springfield Health Care Center, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-4296-CV-C-NKL |
| | ) |
| Jeremiah W. Nixon, Attorney General of the | ) |
| State of Missouri, In His Official Capacity, and | ) |
| Darrell L. Moore, Prosecuting Attorney for | ) |
| Greene County, Missouri, In His Official Capacity, | ) |
| | ) |
| Defendants. | ) |

# DEFENDANT MOORE'S SUGGESTION IN OPPOSITION TO A PERMANENT INJUNCTION AND/OR OTHER DECLARATORY RELIEF

Plaintiff's Complaint should be denied because the newly enacted Missouri Statutes §188.080 and §188.250 are constitutional. Section 188.080, RSMo, is a proper exercise of the state's power to place regulations on abortion to ensure the safety of all women who choose to terminate a pregnancy. Section 188.250, RSMo, is a proper exercise of the state's power to ensure that the parental notification requirement and judicial bypass requirement allowed by the United States Supreme Court are followed in Missouri. Neither §188.080, RSMo, nor §188.250, RSMo, create an undue burden on a woman's right to an abortion.

# Table of Contents

Table of Authorities                                             p3

Suggestions                                                      p6

I. Preliminary Issue                                             p6

II. Thirty Mile Physician Patient Privilege Requirement          p7

    A. The Standard                          p7

    B. Application of the Standard           p8

    C. Travel Is Not the Issue               p9

    D. The Issue Is Not Other Types of Services   p9

    E. No Unconstitutional Delegation        p10

III. Enforcement of Parental Notification and Judicial Bypass    p11

    A. Abstention Is Proper                  p11

    B. The Standard and Definitions          p12

    C. Conduct Is Prohibited Speech Is Not Regulated   p14

    D. Hypothetical Speculation Must Be Avoided    p15

    E. Parental Involvement Is Protected by the Constitution   p15

    F. The Courts and Parents Are Here to Protect Minors   p16

    G. No Violation of the Right to Travel   p17

IV. Conclusion                                                   p18

Certificate of Service                                           P19

**Table of Authorities**

**Cases:**

*Beis v. Dias.* 859 S.W.2d 835 (Mo. App. S.D. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bellotti v. Baird,* 443 U.S. 622 (1979) (*Bellotti II*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brooks v. State,* 128 S.W.3d 844 (Mo. en banc 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Chamberlin v. Missouri Elections Commission,* 540 S.W.2d 876 (Mo. banc 1976) . . . . 14

*Ginserg v. New York,* 390 U.S. 629 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hill v. Colorado,* 530 U.S. 703 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hodgson v. Minnesota,* 497 U.S. 417 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Klinge v. Lutheran Charities Ass'n of St. Louis*, 523 F.2d 56

    (8th Cir. en banc 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lincoln Indus. Inc. v. Director of Revenue,* 51 S.W.3d 462 (Mo. banc 2001) . . . . . . . . 12

*Lujan v. Defender of Wildlife* 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mausolf v. Babbitt* 85 F.3d 1295 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mikulich v. Wright,* 85 S.W.3d 117 (Mo. App. W.D. 2002) . . . . . . . . . . . . . . . . . . . . . . 12

*Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52 (1976) . . . . . . . . . . . .6

*Planned Parenthood Of Mid-Missouri Central Kansas v. Dempsey* . . . . . . . . . . . . . . . 14

*Planned Parenthood of Southeastern Pennsylvania v. Casey,*

    505 U.S. 833 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7,8,9,

*Saenz v. Roe* 526 U.S. 489 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*State ex rel. Dravo Corp. v. Spradling,* 515 S.W.2d 512 (Mo. 1974) . . . . . . . . . . . . . . . 12

*State v. Moore,* 90 S.W. 3d 64 (Mo. banc 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*State v. Reproductive Health Services of Planned Parenthood*

    *of the St. Louis Region, Inc.,* 97 S.W.3d 54 (Mo. App. E.D. 2002) . . . . . . . . . . . 12

*State v. Smothers,* 523 S.W.2d 336 (Mo. App. K.C.D. 1975) . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Raines,* 362 U.S. 17 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Webster v. Reproductive Health Services* 492 U.S. 490 (1989) . . . . . . . . . . . . . . . . . . . 12

*Women's Health Center of West County, Inc. v. Webster,*

    871 F.2d 1377 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

**Statutes:**

§ 188.028, RSMo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 188.080, RSMo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 8, 9, 10

§ 188.250, RSMo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 11, 13, 14, 15, 16, 17

§ 562.016, RSMo ..................................................................................13

**Other:**

WEBSTER'S UNIVERSAL COLLEGE DICTIONARY (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE

    ENGLISH LANGUAGE UNABRIDGED 356 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# SUGGESTIONS

## I. Preliminary Issue

Before addressing the merits of these newly enacted abortion regulations, Defendant Moore again asserts all previous defenses including the lack of subject matter jurisdiction and Plaintiff's failure to state a claim upon which relief can be granted.

As stated in Defendant Moore's Motion to Dismiss, a district court does not have subject matter jurisdiction if a plaintiff lacks standing. *Mausolf v. Babbitt* 85 F.3d 1295, 1301 (8th Cir. 1996) citing *Lujan v. Defenders of Wildlife* 504 U.S. 555 (1992). Defendant Moore recognizes that there are times a physician has standing to challenge an abortion law which creates criminal liability before the law is enforced under 42 U.S.C. §1983. *See Planned Parenthood Association v. Danforth*, 428 U.S. 52 (1976), *Women's Health Center of West County, Inc. v. Webster,* 871 F.2d 1377 (8th Cir. 1989), *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). In this case, the Plaintiff is Springfield Healthcare Center, Inc. Springfield Healthcare Center, Inc. does not face any criminal liability under either section of this newly enacted regulation. Furthermore, any standing Springfield Healthcare Center, Inc. may have should be limited in light of the conflicting interest it has with doctors and minor women under §188.080, RSMo, and §188.250, RSMo.

## II. Thirty Mile Physician Privilege Requirement

### A. The Standard

Missouri §188.080, RSMo, should be declared constitutional no matter what this Court decides regarding the standing of the Plaintiff. Defendant Moore submits that the applicable standard of review in this case is the undue burden standard announced by the United States Supreme Court in *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). "An undue burden exists.... if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Id*. at 878. This does not mean that any regulation of abortion automatically creates an undue burden. "A State may enact regulations to further the health or safety of a women seeking an abortion." *Id.* at 878.

Plaintiff's challenge the part of §188.080, RSMo, which requires physicians who perform abortions to have clinical privileges at a hospital which offers obstetrical or gynecological care located within thirty miles of where the abortion is performed. Plaintiff suggests that a woman's right to an abortion is restricted because it employs a doctor without privileges in the Springfield area. Plaintiff has not explained why it cannot employ a doctor with privileges in the Springfield area. Plaintiff admittedly has not even attempted to have its current physician apply for privileges at all of the local hospitals.

The issue before this Court is not the affect this regulation has on Plaintiff. In fact, this regulation only has an incidental affect on Plaintiff. This law applies to all physicians who perform abortions across the State of Missouri. How this law will affect physicians in the state is not at issue before this Court. The issue for ths Court to determine is whether §188.080, RSMo, furthers the health or safety of a woman seeking an abortion. In making this determination, it is

important to remember that,

> A law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it. Only where the state regulation places an undue burden on a women's ability to make this decision does the power of the State reach into the heart of the liberty protected by the Due Process Clause. *Casey*, 505 at 874.

**B. Application of the Standard**

Section 188.080, RSMo, is designed to ensure that women receiving abortions are able to get the necessary medical attention needed. Defendant Moore expects the testimony presented to establish that an abortion is a medical procedure which can have serious complications. These complications can include shock, hemorrhaging, perforation of the uterus, infection, and an adverse reaction to anesthesia. In Springfield, a woman died as the result of complications to an abortion. With such serious potential complications, the State must make sure that women who have abortions have the proper follow up care. Defendant Moore also expects the testimony to establish that when a women suffering from complications of an abortion procedure is dropped off at the hospital, the doctor who performed the abortion should be the physician treating her. The physician who performed the abortion is in the best position to assess the complication and administer the proper care. Even Plaintiff understands that prompt emergency treatment will be needed at times. (Plaintiff's Suggestions in Support of Preliminary Injunction And/or Permanent Injunction and Declaratory Relief - p4.) A doctor who is three hours away cannot provide the immediate care if it is needed. This undisputed medical reality requires the State of Missouri to enact regulations such as §188.080, RSMo, to safeguard the health and safety of women.

**C. Travel Is Not the Issue**

Defendant Moore disagrees with Plaintiff's assertion that Section 188.080 will effectively preclude women in southwest Missouri from obtaining an abortion because no one else provides abortions in this area. This law does not prohibit abortions from taking place in southwest Missouri. In fact, testimony will establish that there were previously two abortion clinics in Springfield. The new regulation will require Springfield Healthcare Center Inc., to hire a physician with privileges at a hospital within thirty miles, or it will not be able to provide abortions. Perhaps it is the threat of competition to provide abortion services that drives this argument. In explaining how this regulation affects Southwest Missouri, it does not address any of these issues as they relate to other hospitals in southwest Missouri such as those in Branson, Joplin, or Bolivar.

Whether Springfield Healthcare Center or another physician provides abortion services in southwest Missouri is not the issue. The issue for this Court is whether this regulation creates an undue burden on the women's choice to have an abortion. Plaintiff's travel argument falls within the "incidental effect" described in *Casey*. A valid regulation will not be struck down simply because it may increase the cost or availability of an abortion. *Casey,* 505 at 874.. As argued above, this regulation is validly designed to protect the health and safety of the women choosing to have an abortion.

**D. The Issue Is Not Other Types of Services**

Plaintiff complains that §188.080, RSMo, is unconstitutional because the requirement for clinical privileges within thirty miles does not apply to physicians who perform other types of

services at ambulatory care facilities. This is not the issue. As shown above, there is a medical reason for this requirement. "The State of Missouri, in exercising its police powers to protect the well-being of its citizens, has undoubted authority to regulate the conditions under which surgical procedures are performed. Such legitimate state regulation of surgical procedures is not rendered unconstitutional because it is specifically applied to abortion". *Women's Healthcenter of West County, Inc. v. Webster*, 871 F.2d 1377 (8th Cir. 1989). The fact §188.080, RSMo, requires physician privileges for abortion alone does not affect the constitutionality of this law.

**E. No Unconstitutional Delegation**

Section 188.080, RSMo, does not create an unconstitutional delegation of authority to private hospitals. The licensing requirements of physicians or abortion providers is not even addressed in §188.080, RSMo. The Eighth Circuit has already addressed the issue of whether the State can require physicians who perform abortions to have privileges at a hospital. In *Women's Health Center of West County, Inc. v. Webster*, 871 F. 2d 1377, 1382 (8th Cir. 1989), the court said that such a requirement did not violate any due process rights.

Plaintiff has not alleged that local Springfield hospitals have denied physicians privileges because he or she performs abortions. Instead, Plaintiff attempts to distinguish its case by claiming that because there are no public hospitals in Springfield to grant privileges, this regulation must be declared unconstitutional. This assertion is not accurate. First, it assumes that any doctor will be given privileges at a public hospital. This is not accurate. "Hospital privileges in the locale where the physician practices bears on his professional expertise, as do his education, licensing, certifications, experience, and the like." *Beis v. Dias*, 859 S.W.2d 835, 839

10

(Mo. App. S.D. 1993). An unqualified physician or a physician who is not in that locale may be denied privileges. Defendant expects there will be testimony to establish why a physician must be in the locale where privileges are granted. Second, Plaintiff assumes that all private hospitals will deny privileges arbitrarily. Physicians at private hospitals have federally protected rights when those hospitals receive federal funds. *See Klinge v. Lutheran Charities Ass'n of St. Louis*, 523 F.2d 56 (8th Cir. en banc 1975).

Finally, Plaintiff cites several cases which do not apply the undue burden standard put forth by *Casey*. *Casey* is very clear that incidental effects which make it more difficult to obtain an abortion or more costly do not create a per se undue burden. *Casey,* 505 at 874. Having a doctor who is qualified, licensed, and has admitting privileges, may increase the cost of an abortion, but such a restriction is reasonable to ensure the safety of the woman.

## III. Enforcement of Parental Notification and Judicial Bypass

### A. Abstention Is Proper

Section 188.250, RSMo, is not an unconstitutional restriction on speech. The issue of what these terms mean and their application should be decided by the state courts of Missouri. For this reason, Defendant Moore contends that this Court should abstain from ruling on Count II of Plaintiff's Complaint, exercise the Court's discretion, and dismiss Count II. For support of this request the Court's attention is direct to Defendant Moore's Motion For Partial Abstention and Suggestion in Support.

## B. The Standard and Definitions

If this Court elects to consider the Count II of the Plaintiff's Complaint, the principles of statutory construction used in Missouri courts must be applied. *Webster v. Reproductive Health Services*, 492 U.S. 490 (1989). Missouri courts employ common sense and practical interpretation when construing statutes. *State ex rel. Dravo Corp. v. Spradling*, 515 S.W.2d 512, 516 (Mo. 1974). "To interpret the statute properly it should be read carefully and in its entirety, with particular attention to what conduct a person must know is prohibited." *State v. Moore*, 90 S.W.3d 64 (Mo. banc 2002). Careful review of §188.250, RSMo, will show that the terms used in this statute have common sense meanings which put everyone on notice as to what conduct is prohibited.

The terms "cause," "aid," and "assist," all have commonly understood meanings that provide definite warning of what conduct is prohibited. Words used in a statute are given the plain and ordinary meaning, as "found in the dictionary...unless the legislature provides a different definition." *State v. Reproductive Health Services of Planned Parenthood of the St. Louis Region, Inc.* 97 S.W.3d 54, 61 (Mo. App. E.D. 2002) (quoting *Lincoln Indust. Inc. v. Director of Revenue*, 51 S.W.3d 462, 465 (Mo. banc 2001)). Since these terms are not defined within the statute, this Court must look to the dictionary for meaning.

1. Cause

Missouri courts have already been forced to determine whether the term "cause" is vague. The definition of "cause" used in Missouri is "to serve as cause or occasion of: bring into existence: make ... to effect by command, authority, or force[.]" *Mikulich v. Wright* 85 S.W.3d 117, 120 (Mo. App. W.D. 2002) quoting Webster's Third New International Dictionary of the

12

English Language Unabridged 1154 (1971).  This means that §188.250, RSMo, does not allow someone to command or force a minor to obtain an abortion without parental consent or judicial consent.

    2.  Aid or Assist

The term "aid" means "to give help or assistance." Webster's Universal College Dictionary (1997).  The term "aid" is of such common meaning that the Missouri Supreme Court has approved use of the term "aid" in the Missouri Approved Instructions - Criminal 3d 304.04.  MAI-CR 3d 304.04 is the instruction for accomplice liability which attaches when a defendant "aids" someone in committing a criminal offense.  A former version of this instruction which used both the terms "aid" and "assist" was upheld because these words have such common usage neither could not confuse a jury.  *State v. Smothers*, 523, S.W.2d 336, 339 (Mo. App. K.C.D. 1975).  This means that these terms are not vague.  Missouri §188.250, RSMo, does not allow someone to help a minor to obtain an abortion without parental consent or judicial consent.

    3.  Intentionally

The term "intentionally" creates a mens rea element to the conduct which is proscribed.  The term "intentionally" is another term of common meaning.  It is a term used throughout Missouri statutes.  In Missouri law it has been equated to terms wilfully, knowingly, deliberately, and on purpose.  *See Vernon's Annotated Missouri Statutes §562.016*, RSMo, (2005) Comment to 1973 Proposed Code.

After obtaining the common meaning for these terms, the Court must determine how to apply the statute.  It is a cardinal rule of statutory construction that where a statute is fairly susceptible of construction in harmony with the Constitution it must be given that construction

13

by the courts and, unless the statute is clearly repugnant to the organic law, its constitutionality must be upheld. *Chamberlin v. Missouri Elections Commission*, 540 S.W. 2d 876, 879 (Mo. banc 1976), *see also Planned Parenthood of Mid-Missouri and Eastern Kansas v. Dempsey*, 167 F.3d 458 (1999). Therefore, this Court must try to interpret §188.250, RSMo, in a constitutional manner.

**C. Conduct Is Prohibited, Speech Is Not Regulated**

Section 188.250, RSMo, is a constitutional statute designed to prohibit conduct, not to prohibit speech. The purpose of §188.250, RSMo, is to stop individuals from intentionally causing, aiding, or assisting minors from obtaining an abortion without parental consent or judicial approval. This law is not designed to prohibit the dissemination of information to minors about abortion. In fact, the term "information" is not found in the statute even thought it is used repeatedly in Plaintiff's Complaint.

Based upon Missouri rulings, this Court must make the distinction between a law designed to prohibit conduct and a law that infringes upon free speech. This issue is similar to one faced by the Missouri Supreme Court in *State of Missouri v. Moore*, 90 S.W.3d 64 (Mo. en banc 2002) which challenged a criminal statute for making a sexual solicitation when the defendant knew such solicitation would cause a front or alarm. In *Moore*, the court ruled that the words in that case were "not just speech, but conduct that the defendant under the law is presumed to know is likely to cause affront or alarm." *Id*. At 69. This distinction should be applied to §188.250, RSMo. There is no regulation regarding what information can be provided. However, the conduct of intentionally causing, aiding, or assisting, a minor wanting to obtain an

abortion to avoid parental consent or judicial bypass is prohibited.

### D. Hypothetical Speculation Must Be Avoided

Plaintiff poses several hypothetical speculations suggesting that §188.250, RSMo, violates free speech. These hypothetical situations should not affect the Constitutionality of this statute. "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *United States v. Raines,* 362 U.S. 17, 23 (1960)). Furthermore, the Missouri rule regarding hypothetical speculation states that "'it is not necessary to determine if a situation could be imagined in which the language used might be vague or confusing; the language is to be treated by applying it to the facts at hand.'" *Brooks v. State,* 128 S.W.3d 844, 851, (Mo. banc 2004) (quoting *State v. Lee Mechanical Contractors*, 938 S.W.2d 269, 271 (Mo. banc 1997)). Plaintiff chose to file this lawsuit before Defendant Moore or anyone attempted to enjoin their behavior. The result of such an attack means that Plaintiff can only attack the intended application of this law. The intended application is to prohibit conduct not to prohibit speech. Therefore, Plaintiff's hypothetical speculation should be ignored.

### E. Parental Involvement Is Protected by the Constitution

The United States Supreme Court has held that there is not an undue burden on a minor who seeks an abortion to first obtain the consent of a parent or guardian, provided there is an adequate judicial by-pass provision. *Casey*, 505 U.S. at 899. This is based on the fact that the

"State has a strong and legitimate interest in providing a pregnant minor with the advice and support of a parent during the decisional period." *Hodgson v. Minnesota*, 497 U.S. 417, 456 (1990). The reasons for parental involvement have been explained several times by various courts dealing with minor's rights and abortion. Parental involvement in the life of children is a fundamental responsibility that the State needs to promote. "As immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, a State reasonably may determine that parental consultation often is desirable and in the best interest of the minor." *Bellotti v. Baird,* 443 U.S. 622, 640 (1979) (*Bellotti II).*

The Missouri legislature has recognized the interest of parents and the minor by previously adopting §188.028, RSMo. Section 188.028, RSMo, promotes parental involvement by requiring a minor to obtain parental consent prior to an abortion or a judicial bypass. Although this restriction was placed on minors, there was no enforcement mechanism to ensure that parental consent or judicial involvement was enforced in Missouri. Following the United States Supreme Court's mandate to the states to "enact laws designed to aid discharge of" parenting responsibilities, Missouri enacted §188.250. *See Ginsberg v. New York*, 390 U.S. 629, 639 (1968). With §188.250, RSMo, the Missouri legislature has created liability on individuals who intentionally cause, aid, or assist a minor in obtaining an abortion without parental consent or judicial bypass. Since it is reasonable to have laws requiring parental consent or judicial bypass, a law creating a right for a parent to enforce these requirements must also be reasonable.

## F. The Courts and Parents Are Here To Protect Minors

Plaintiff contends that there are individuals in the lives of minors who should be able to

provide assistance in making the abortion decision. A minor may choose to discuss the abortion decision with a friend, attorney, clergy, counselor, etc. Input by these individuals will probably help the minor make a wise decision. However, these individuals cannot provide the required consent for an abortion in Missouri. The rulings of the United States Supreme Court adopted and enacted into law in Missouri only allows for parental consent or judicial bypass. It reasonably follows that individuals who are unable to provide consent for a minor to obtain an abortion also have no right to intentionally cause, aid or assist a minor in obtaining an abortion across the state lines just to circumvent Missouri's parental consent/judicial bypass requirements. Declaring §188.250, RSMo, unconstitutional demeans the importance placed upon parental involvement. This statute must be upheld to protect the parental notification and consent laws.

**G. No Violation of the Right to Travel**

Plaintiff's allegations that §188.250, RSMo, violates a minor's right of interstate travel is misguided. The only restriction §188.250, RSMo, creates is civil liability for intentionally causing, aiding, or assisting a minor to obtain an abortion without parental consent or judicial bypass. This section has nothing to do with the right to interstate travel.

To resolve issues concerning interstate travel, this Court should apply the standards and reasoning used in *Saenz v. Roe*, 526 U.S. 489 (1999). In *Saenz*, the Court explained that the right to travel has three components. First, the right of a citizen to enter one state and ot leave another State. Second, it protects the right of a citizen to be treated as a welcome visitor rather than an unfriendly alien when temporarily in the other State. And, third, for those who elect to become permanent residents of the new State, the right to be treated like the other citizens of that State.

*Id.* at 500.

None of these three components applies to §188.250, RSMo. This regulation does not prohibit or restrict any travel between States. It does not regulate or restrict the way a citizen is to be treated in another State. Finally, it does not have any application to a citizen of one State deciding to permanently reside in another State.

## IV. Conclusion

WHEREFORE, Defendant Moore requests this Court to deny Plaintiff's request for declaratory judgment and motions and for preliminary and permanent injunctive relief, and provide to Defendant Moore all relief appropriate including costs.

    Respectfully submitted,

    /s/ Darrell L. Moore
    Darrell L. Moore, Mo. Bar #30444
    Greene County Prosecuting Attorney

    /s/ T. Todd Myers
    T. Todd Myers, Mo. Bar #50252
    Greene County Assistant Prosecuting Attorney
    1010 N. Boonville
    Springfield, Missouri 65804
    (417) 868-4061
    (417) 868-4160

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of October, 2005, a true and correct copy of the foregoing was electronically filed with the clerk of the court using the CM/ECF system, and thereby made available to the following counsel:

Betsy Badger
Theresa Levings
Badger and Levings
920 Main Street
Suite 1920
Kansas City, MO 64105

Janet Crepps
The Center For Reproductive Rights
2108 Bethel Road
Simpsonville, SC 29681

Victorine R. Mahon
Assistant Attorney General
Broadway State Office Building
221 West High Street, 8th Floor
Jefferson City, Missouri 65102